## Birnbaum v. Moosic Borough

*Roger Mattes*, for plaintiffs.

*Christopher T. Powell*, for defendants.

HOBAN, P. J., March 22, 1963.—Plaintiffs are engaged in the business of storing and marketing propane gas. They bought a tract of land in the Borough of Moosic, upon which they propose to erect a plant for their business purpose, having been forced out of their original location in the borough by a State highway construction program. The borough has an ordinance regulating "the construction, alteration, and inspection of buildings in the Borough". Under this ordinance, the borough council grants building permits for structures

other than dwellings and garages. In this case, council turned down plaintiff's application for a building permit, for the reason that in its belief, the proposed establishment of a plant for the storage and distribution of a volatile explosive gas at the particular site offered a danger to the inhabitants of the borough and so properly could be refused under the provisions of the ordinance. The "danger", in council's opinion, arises from the fact that the proposed site is on an area covered with mine rock and culm containing substantial amounts of flammable material.

Plaintiffs, conceiving that the purported application of the ordinance to their situation violates the Constitution of the United States and the Commonwealth of Pennsylvania for want of due process, and that, for reasons other than that, the ordinance is void as an attempt to impose land use restrictions without the inherent requirements of a building code or zoning ordinance, seek to enjoin the borough and its officials from enforcing the ordinance as to it, and from interfering with plaintiff's proposed building, storage and marketing operation.

Defendants answer that plaintiff proposes to erect its plant on a portion of an old mine rock and culm dump containing quantities of flammable material; that the establishment of a facility for the storage and distribution plant for a volatile gas product would offer a health and safety hazard to the people of the community, and that the permit was properly refused under the general police power of the borough, as well as under the terms of the ordinance.

A fact issue arises: Will the proposed plant offer a safety and health hazard to the community?

The legal issues are: (1) Assuming that the proposed operation in its location may constitute a hazardous activity, may the borough, under its general police power prohibit its establishment, and (2) does

the ordinance clothe the borough with power to impose a land use restriction against an otherwise legitimate business without providing standards for such restrictions, and solely on the opinion of the borough officials that the prospective business may become a public nuisance?

### FINDINGS OF FACT

1. Plaintiff operated a plant for the storage, preparation and distribution of propane gas in the Borough of Moosic. The construction of Interstate Route 81, the Anthracite Highway, made necessary the appropriation of plaintiff's land and the demolition of its plant.

2. Plaintiff then purchased a plot of ground in the borough, 20-plus acres in extent, on a portion of which it proposes to erect its plant.

3. The plot in question originally contained a large mine refuse or culm bank, the refuse of an anthracite mining operation. A portion of the bank still on the property is of substantial height, another portion being leveled off.

4. Plaintiff proposes to erect its plant on the leveled portion of the property, at a point on which the former culm cover has been stripped to original soil or has only a light cover of culm. The site will be adjacent to a railroad, and will include a siding for the unloading of railroad tank cars, approaches for distributing trucks and loading platforms.

5. Plaintiff submitted plans for the proposed plant to the Pennsylvania Department of Labor and Industry. These plans were approved by the department as fully complying with the Pennsylvania Regulations for Liquefied Petroleum Gas.

6. The approved construction will require concrete footings for supports for the bulk storage tanks to be sunk to solid earth, the under side of the tanks as supported to be four feet above surface level, and all

loading and storage surfaces to be at a similar elevation above the surface.

7. Plaintiff has engaged a contractor to level so much of the bank as is above original ground contour, the contractor to dispose of the removed cover.

8. Experts in the design, construction, testing and operation of liquefied petroleum or propane gas plants testified that this plant, if constructed as designed and located, offers no hazard, even in the event of a culm bank fire, because of the built-in safety devices, and because the location is six or more times the required distance away from other structures.

9. The borough engineer, a graduate mining engineer, testified that culm banks containing rock and breaker tailings are subject to ignition by spontaneous combustion, but there is no evidence that the refuse on plaintiff's land is now, or has ever been, on fire.

10. It is a known fact that anthracite refuse dumps, once ignited, are extremely difficult, if not impossible, to extinguish by any means within the capability of ordinary fire departments, and we may likewise accept as a fact that the economic potential of the Borough of Moosic would be insufficient to provide for the extinguishment of a well-rooted fire in any culm bank of substantial size.

11. The planning consultant for the borough presented, by a current land use map, evidence to show that the proposed installation is within a half-mile radius of one-half of the population of the borough.

12. Ordinance 229 of the Borough of Moosic, approved November 15, 1937, purports to regulate the "construction, alteration, and inspection of buildings, in the Borough of Moosic". The ordinance provides generally that buildings in certain classes may not be erected without first securing a permit. The pertinent sections are as follows:

"Section 3. Whenever an application for a permit

for any building to be used for any other purpose than as a dwelling or as a garage is presented to the Secretary, said application shall immediately be referred to the Council, and no permit shall be issued for the erection of such building until a permit has been authorized by the Council upon the approval of the Burgess. The Council, in passing upon the application for a permit for such building shall consider the effect of the construction of said building upon the health, cleanliness, beauty, convenience, comfort and safety of the owners of the property located, and the citizens residing, within the territory contiguous to the proposed building, and if, in the opinion of the Burgess and Council such building when erected will interfere with, check, hinder or disturb the health, cleanliness, beauty, convenience, comfort and safety of the borough and of the owners of the property located, and the citizens residing, within the territory contiguous to the proposed building, then they shall be refused".

"Section 10. The Borough Secretary shall issue permits for construction, erection, placing or alteration of any building or buildings only when he shall have received an approval from the Building Committee or Council, said approval not to be given until the plans and specifications have been carefully examined and it shall have been determined that the proposed building is designed as reasonably safe for the proposed use and said plans and specifications are in full conformity with the provisions of this ordinance and all other ordinances relative to buildings and the Acts of Assembly of the Commonwealth of Pennsylvania relating to buildings. No building shall hereafter be constructed, erected, placed or altered within the limits of the said borough, or construction work commenced on the same, until a permit has been issued as aforesaid, and such permit shall be granted or refused within ten days after the application for the same. Any applicant whose

application has been refused, or any person who has been ordered to incur expense about any building, or to stop operations or work on account of non-conformity to this ordinance may appeal from such decision by giving notice in writing to the Borough Secretary of such appeal to Council, provided that no appeal shall be allowed unless taken within five days from the date of the said refusal or orders. In such appeals, the Council shall sit as a Board of Appeal, and shall direct the Secretary to issue his permit under such conditions as they may require, or to withhold the same or to make such other and further order in the premises as the Council may deem proper".

13. Plaintiff filed its application for a permit to erect its plant, according to its State-approved plans, which, after a number of hearings, was finally refused by the borough council by action dated April 24, 1962.

14. The ostensible reasons for refusing the permit were the potential inherent in a mine refuse bank for fire and the consequent danger of igniting the propane plant or, conversely, the possibility of fire in the propane plant igniting the culm bank and so producing a health and safety hazard to the community.

15. An added reason was the possibility of interfering with a flood control project which might be caused in the process of reduction of the bank to grade. But the situs of this project, not yet in the planning stage or decided as to detailed location, is so far from the site of the proposed structure as not to be influenced thereby.

## DISCUSSION

It is obvious that ordinance 229 is not a zoning ordinance, for it prescribes neither zones, permissible land use, area regulations, provisions for variances, nor any of the other characteristics of permissible zoning procedures as authorized by section 3501 (renumbered)

et seq. of The Borough Code of July 10, 1947, P. L. 1621, 53 PS §48301. Nor has the borough prescribed any other ordinance purporting to establish land use restrictions. Absent such valid restrictions, the borough may not arbitrarily limit the use of any land in the borough. The code provides specific authority to prohibit any uses which may be deleterious to the health or safety of the inhabitants and to prohibit or abate nuisances, but the mere statement that a given use is undesirable or subject to prohibition does not make it so.

Factually, the borough does not consider this proposed use as either dangerous per se or otherwise undesirable, and, according to its mayor, would welcome plaintiff's business in any area free from what the borough considers a potential fire hazard.

If ordinance 229 be regarded as a building code, the only standard or regulation prescribed is by reference to the State laws regulating buildings. But the Department of Labor and Industry, which administers the State building laws, has approved the proposed structure both as to location and construction.

The borough, therefore, is forced to justify its refusal on the sole ground that the proposed structure is, in fact, a dangerous structure. See The Borough Code, sec. 1202, 53 PS §46209. This is a fact question, not one for surmise or arbitrary opinion.

On the evidence, the chancellor can only conclude that the assumption that the establishment of plaintiff's business on the proposed location presents an imminent or probable dangerous situation is arbitrary, and that its prohibition amounts to confiscation and must be enjoined. A mere possibility does not connote a probability, and plaintiff is taking effective means to reduce even the possibility. The proposed structure is sufficiently remote from other structures to meet and substantially exceed the State requirements. The

internal structure of the plant has effective controls against fire coming from within. The ground on which the plant is to be erected is bare or has minimal refuse cover. The business itself is not noxious or offensive to the inhabitants.

The general police power of the borough is only that which is given to it by the State. It may not be exercised in an arbitrary or illegal manner. It is illegal to interfere with the legitimate free use of a property owner's land in the absence of valid restrictions, or for a cause which amounts to a nuisance. No such cause is evident here.

The fear of a coal refuse dump fire is an understandable one, and the chancellor is well aware of the fearful and deleterious consequences of the many which exist in the anthracite area. We understand also the zeal and concern of the mayor and the council of Moosic Borough in their desire to guard their borough and its people against such a possibility. Laudable as their concern may be, as we see the law, we cannot deprive a property owner of the legitimate use of his property on a mere inchoate potential.

We would expect, however, that plaintiff, in the erection of its plant, will, in cooperation with the borough authorities, exert every effort to insure that the utmost in safety measures will be accomplished.

### CONCLUSIONS OF LAW

1. Plaintiff's proposed structure complies with the regulatory provisions of Ordinance 229 of the Borough of Moosic so far as it, by reference to appropriate acts of assembly, purports to regulate the construction of buildings.

2. There is no evidence that the proposed structure at the proposed location is a dangerous structure within the meaning of the law.

3. The prohibition of the proposed use is an arbi-

trary and unreasonable use of the police power of the borough.

4. The prohibition of the proposed use, in deprivation of plaintiff's property right, is without due process of law.

5. The prohibition of the proposed use, in the absence of a valid land use restriction, is confiscatory.

6. Plaintiff is entitled to an injunction prohibiting interference with the construction of its building, as approved and authorized by the State Department of Labor and Industry.

7. Plaintiff is entitled to a mandatory injunction directing defendant and its proper officials to issue an appropriate building permit, in complying with the provisions of ordinance 229 as to deposit of approved plans and payment of fees.

### DECREE NISI

Now, March 22, 1963, it is ordered, adjudged and decreed as follows:

1. Defendants are enjoined and prohibited from interfering with the construction of plaintiff's plant for the processing and distribution of liquefied petroleum (propane) gas, under approved plans and at the approved location on plaintiff's land in Moosic Borough.

2. Defendants, or the proper officers of Moosic Borough, are ordered and directed to issue to plaintiff an appropriate building permit for such construction, subject to the submission of approved plans and the payment of appropriate fees, and subject to the continuing rights of defendants' officers to make appropriate inspections assuring conformity of construction to plans.

3. Each party to pay its own costs.

### ON EXCEPTIONS TO DECREE NISI

Before Hoban, P.J., and Robinson and Conaboy, JJ.
HOBAN, P.J., June 5, 1963.—In this action to compel

defendants to issue a building permit for the erection of a propane gas distribution plant, and to enjoin interference with its proposed construction and use, the chancellor found for plaintiffs, directing the permit to issue and enjoined interference. Defendants filed exceptions to six of the chancellor's findings of fact, to all of the conclusions of law and to the decree nisi.

At oral argument, counsel for defendants conceded that the borough ordinance, in its restrictive provisions, could not be supported as a valid land use restriction (zoning) or as a building code; hence, the borough was forced to rely on what it conceived to be its general police power in its effort to restrain what it conceived to be an installation offering a "present danger" to the community. From a fact standpoint, the chancellor concluded that assertion was "not proven"; hence, offered no basis for the exercise of the police power, if, as a matter of law, the borough possessed such power. We think the borough officials have succumbed to the usual temptation to regard their own evidence and their conclusions therefrom as convincing, regardless of evidence to the contrary, of which there is plenty in the record. In his adjudication, the chancellor has fully reviewed the fact situation, and we will not disturb his findings.

Furthermore, the regulation of the construction and location of propane plants of this nature has been fully preempted by the Commonwealth, which has by statute prohibited municipalities from adopting or enforcing any *ordinance or regulation* in conflict with the statute: Act of December 27, 1951, P. L. 1793, 35 PS §1321 et seq. The act, as amended, August 11, 1959, sec. 3.4, further provides for a system of State inspection, with the power in the Department of Labor and Industry to direct discontinuance of the operation if it finds a condition to exist which, in the judgment of the department, is dangerous to life and property: 35 PS §1323.4.

For a discussion on the limitation of municipal authority caused by State preemption, see Department of Licenses and Inspections v. Weber, 394 Pa. 466.

In view of the chancellor's findings of fact, it is unnecessary to discuss in detail the question of the extent of the borough's police power. Certainly, it has no power to restrict a legitimate use of property to prevent a hazard not proven to exist.

The chancellor's conclusions of law follow logically from the findings of fact and are affirmed.

Now, June 5, 1963, the exceptions to the findings of fact, conclusions of law and decree nisi are overruled, and the decree nisi is made final.